IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 5, 2019

**STATE OF TENNSSEE v. RANDY MILLIGAN**

**Appeal from the Circuit Court for McNairy County**
**No. 4011    J. Weber McCraw, Judge**

_____

**No. W2019-00377-CCA-R3-CD**

_____

Randy Milligan ("Defendant") pled guilty, as a Range III persistent offender, to delivery of a Schedule III controlled substance, a Class D felony. At a subsequent hearing, the trial court sentenced Defendant to eleven years, with a forty-five percent release eligibility, to serve in the Tennessee Department of Correction. On appeal, Defendant argues that the trial court abused its discretion by denying Defendant's request for a suspended sentence. Following a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

J. Colin Rosser, Somerville, Tennessee, for the appellant, Randy Milligan.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and Lisa Miller, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural History**

*Sentencing hearing*

Defendant's presentence report contained the following facts regarding the offense:[1]

---

[1] Defendant did not include a transcript of the plea submission hearing in the record on appeal.

On 8/23/2018 [Investigators] Kellum and Rickman met with a confidential source . . . in Selmer, McNairy County[,] Tennessee to conduct an undercover purchase [of] sublingual pills[2] from [Defendant]. [The CI] met with . . . [Investigator] Kellum searched [the CI] and the vehicle. [The CI] was fitted with an audio/video recorder and an audio transmitter and provided $50.00 to make the purchase with. At approximately 10:42 [a.m.] [the CI] left the meeting location to travel [to] 149 Old Stantonville Road[,] Selmer, [Tennessee] 38375 while officers monitored nearby with the audio transmitter.

At approximately 10:45 [a.m.] [the CI] arrive[d] at 149 Old Stantonville Road. [Defendant] [got] into [the CI's] vehicle. At approximately 10:46 [a.m.] [the CI] and [Defendant] [left] 149 Old Stantonville Road. At approximately 10:46 [a.m.] [the CI] and [Defendant] arrive[d] at Lott's [P]harmacy to get his sublingual prescription filled. [Defendant] [wa]s inside the pharmacy for a few minutes and then [came] back to the vehicle. At approximately 10:51 [a.m.] [the CI] and [Defendant] leave 835 Mulberry Avenue. At approximately 10:54 [a.m.] [the CI] and [Defendant] arrive[d] at Old Stantonville Road. [Defendant] exit[ed] the vehicle and [went] inside the residence. [Defendant] then return[ed] and [gave] [the CI] two sublingual pills. At approximately 10:55 [a.m.] [the CI] [left] 149 Old Stantonville Road to meet back with officers.

At approximately 10:58 [a.m.] [the CI] arrive[d] back at [the] meeting location with officers where [Investigator] Kellum recovered Exhibit 1 (being 2 sublingual pills) and [another] Exhibit . . . (being the audio/video recording of the conversation and transaction between [the CI] and [Defendant]). [Investigator] Kellum again searched [the CI] and the vehicle. [Investigator] Kellum took a statement from [the CI] on what happened.

Billy Milligan testified that he was Defendant's older brother. He stated that Defendant's drug problem began when Defendant was a teenager. Mr. Milligan testified that Defendant had been "in and out of jail" and that "nothing seem[ed] to work." He explained that Defendant had never attended drug rehabilitation. He stated, "I would like to see [Defendant] get rehab where maybe he can get back out in the workforce and make a decent living for himself."

---

[2] The presentence report identifies the pills delivered by Defendant as buprenorphine, a Schedule III controlled substance.

- 2 -

Glenn Mudders testified that he is a jail minister and has known Defendant since 2015. He said that Defendant was a "good guy" and that Defendant did not have "a violent bone in his body[.]" Mr. Mudders was aware that Defendant has been in jail and has "always had a drug problem." Mr. Mudders stated that, in the six weeks before sentencing, Defendant told him repeatedly that he wanted to seek treatment for his drug problem.

Defendant testified that he had a drug problem and that his drug addiction had led to medical issues, including Hepatitis C. He stated that he had a brain tumor "a couple of years ago" that affected his memory. He also had problems with one of his hands; he explained that he fell and crushed a bone inside his hand and that his hand "just stays numb a lot." Defendant stated that he was not currently on parole or probation. He stated that he would like the opportunity to go to a drug rehabilitation program because he had never attended one. Defendant agreed that he had prior convictions for credit card fraud, forgery, identity theft, burglary, attempted escape, and prior drug convictions. Defendant acknowledged that he had fifty prior convictions. When asked by the trial court what had kept Defendant from attending drug rehabilitation, Defendant responded, "I guess I have. I just never wanted to[.]"

*Trial court's ruling*

At the conclusion of the hearing, the trial court sentenced Defendant, as follows:

The Court is required to consider certain factors for sentencing which I will do. He has pled guilty to delivery of a Schedule III substance as a persistent offender. So the Court also considers the facts in evidence which were presented at the plea and now which is being presented at this sentencing hearing. The Court has received the pre-sentence report and also looks to the sentencing guidelines, any potential alternatives. The Court also looks to the nature and characteristics of the criminal conduct involved in this plea. The Court also considers any mitigating and enhancing factors and certainly considers the statements of the witnesses today. Again, by agreement, he's a Range III persistent offender.

With regard to enhancing factors, the Court agrees, based on the pre-sentence report and now [D]efendant's testimony, he has criminal convictions. I'm not sure all of them were felonies. Perhaps they all were, but he has in excess of fifty convictions, his testimony at least fifty felony convictions and I think these go back to 1986 from what I saw.

- 3 -

. . . So he has a previous history of criminal convictions or behavior in addition to those necessary to establish this range. With regard to mitigating factors, the Court agrees with [c]ounsel, his conduct did not cause or threaten any serious bodily injury.

With regard to any probation considerations, even though he may not be on any probation now, he has in the past. Those have not been effective. Again, looking at the pre-sentence report, he has an extremely long history of criminal behavior so the Court puts strong consideration on his prior criminal history, his prior actions, prior character of [D]efendant. Now, I'm to be moved that he has a drug problem and needs some help. It should have been obvious since at least 1986 that there have been issues that you needed some help on.

While I appreciate the witnesses, you know, they've been counseling with you . . . and apparently they could not get you to go to rehab. Now you only apparently want to go because you're looking at a substantial jail sentence. So I don't think probation is an option.

Again, with the long criminal history, the Court is sentencing him to [serve] [eleven] years at [forty-five] percent.

This timely appeal follows.

## II. Analysis

Defendant contends that the trial court abused its discretion by denying his request for probation based solely on the circumstances of the offense. He argues that the offense for which he was convicted was not violent, horrifying, shocking, reprehensible, or offensive. The State responds that Defendant's sentence is presumptively reasonable and that Defendant had failed to overcome this presumption.

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2019), Sentencing Comm'n Cmts.

- 4 -

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2019); *Bise*, 380 S.W.3d at 706. While the trial court should consider enhancement and mitigating factors, such factors are advisory only. *See* Tenn. Code Ann. § 40-35-114 (2019); *see also Bise*, 380 S.W.3d at 699 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). A trial court's "misapplication of an enhancement or mitigation factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706.

The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in *Bise* also applies to a trial court's decision to grant or deny probation. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *Bise*, 380 S.W. 3d at 708). Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6)(A) (2019).

Tennessee Code Annotated section 40-35-303 states that "[a] defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; however, no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-304, § 39-13-402, § 39-13-504, § 39-13-532, § 39-15-402, § 39-17-417(b) or (i), § 39-17-1003, § 39-17-1004 or § 39-17-1005." Tenn. Code Ann. § 40-35-303(a) (2019). A defendant has the burden of establishing that he is suitable for probation and "demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

In *State v. Kendrick*, this court set forth several considerations appropriate for the determination of whether an offender is entitled to probation:

> Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear*, 568 S.W.2d 285 (Tenn. 1978). The nature and circumstances of the offenses may often be so egregious as to preclude the grant of probation. S*ee State v. Poe*, 614

S.W.2d 403 (Tenn. Crim. App. 1981). A lack of candor may also militate against a grant of probation. *State v. Bunch*, 646 S.W.2d 158 (Tenn. 1983).

*State v. Kendrick*, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999).

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2019). In addition, the principles of sentencing provide that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. *See* Tenn. Code Ann. § 40-35-103(2), (4) (2019).

In this case, the record reflects that the trial court did not rely solely on the circumstances of the offense in denying probation. Rather, the trial court found that Defendant had a long history of criminal conduct with over fifty convictions dating as far back as 1986. The trial court also found that Defendant had been previously granted probation but that probationary sentences had "not been effective." Both of these findings are fully supported by the record. Moreover, as recognized by the State, because the trial court imposed an eleven-year sentence, Defendant was not eligible for probation. *See* Tenn. Code Ann. § 40-35-303(a) (2019). Defendant was also not a favorable candidate for other forms of alternative sentencing because he was being sentenced for a "third or subsequent felony conviction involving separate periods of incarceration or supervision[.]" Tenn. Code Ann. § 40-35-102(6)(A) (2019).

We conclude that the trial court's denial of probation for Defendant was based on a proper application of the purposes and principles of sentencing. The trial court properly determined that Defendant had an extensive history of criminal conduct and that measures less restrictive than confinement had frequently been applied unsuccessfully. *See* Tenn. Code Ann. § 40-35-103(1)(A), (C) (2019). Therefore, the denial of probation

- 6 -

and the sentence of confinement are presumed to be reasonable.  Defendant has failed to prove the trial court abused its discretion and failed to overcome the presumption of reasonableness.  *Caudle*, 388 S.W.3d at 280.

## III. Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE